Parker M. NIELSON, Petitioner,

v.

**DIVISION OF PEACE OFFICER STANDARDS AND TRAINING (POST), DEPARTMENT OF PUBLIC SAFETY, and Dale Gurley, Respondents.**

No. 920355–CA.

Court of Appeals of Utah.

April 20, 1993.

---

Parker M. Nielson, Daniel Darger, and John Michael Coombs, Salt Lake City, for petitioner.

Jan Graham, Richard D. Wyss, and Betsy L. Ross, Salt Lake City, for respondents.

Before BENCH, BILLINGS and RUSSON, JJ.

## OPINION

BENCH, Judge:

Petitioner, Parker Nielson, seeks review of a decision by the Division of Police Officer Standards and Training (POST) not to conduct a decertification hearing against Dale Gurley, a wildlife conservation officer. We dismiss the petition for lack of jurisdiction.

## BACKGROUND

The facts of this case are not particularly relevant to our decision, but they provide a helpful background for understanding Nielson's petition. We recite but a few allegations made by Nielson against Gurley in a complaint filed with POST.

On September 8, 1990, Officer Gurley forcibly entered a locked bird pen belonging to Nielson. The pen was part of a licensed game farm. Gurley then released a live Chukar (a game bird), and took bird feed, feeders, bands purchased from the Division of Wildlife, and watering devices. He then rendered the pen unusable. Gurley did not have a warrant, and did not make an arrest or issue a citation. He did not report the destruction of the pen and the taking of Nielson's property until Nielson filed a civil suit against him. Upon being served, Gurley prepared a report of the incident and fabricated a citation against Nielson, claiming that he mailed the citation to Nielson. Gurley admitted in civil court that he had not actually issued a citation to Nielson, nor had he ever intended to issue Nielson a citation. The trial court granted Nielson partial summary judgment, holding that Gurley had acted without probable cause and that his conduct was unlawful. The trial court also granted Nielson's motion to strike Gurley's affidavit because it was "riddled with untruths."

Nielson, seeking to have Gurley's certification either revoked or suspended, filed a verified complaint with POST complaining of Gurley's actions. He asserted that Gurley was not fit to be a peace officer because he had unlawfully taken private property and had committed perjury in the civil suit. Upon receiving the complaint, POST staff investigated the matter. The staff concluded that Gurley had erred, but recommended that POST discontinue any further action against him. The director of POST accepted the recommendation and notified Gurley and Nielson that the case was closed. Nielson repeated his request for a hearing in a motion for reconsideration filed with POST, but POST did not respond. Consequently, no hearing has ever been conducted by POST.

## ISSUE

■ Nielson requests that this court deem POST's refusal to conduct a decertification hearing to be a formal adjudicative proceeding. POST's decision would then be subject to Utah's Administrative Procedures Act, (UAPA), Utah Code Ann. § 63–46b–16 (1989), and we would have jurisdiction to review it.[1] Nielson asserts that since he filed a complaint with POST, POST's decision not to conduct a formal hearing violated UAPA. We hold that inasmuch as POST did not conduct any formal proceedings, nor did Nielson's filing of a "complaint" with POST require it to do so, we do not have jurisdiction to review POST's decision not to pursue decertification of Gurley.

## ANALYSIS

■ Nielson claims a right, as a private citizen, to initiate decertification proceedings against Gurley before POST, and that UAPA requires that POST sit as an administrative tribunal to hear and render a decision on the charges against Gurley. A review of UAPA and the statutes governing POST, however, reveals that Nielson has no such right.

Nielson asserts that section 63–46b–3(3) of UAPA, which discusses the procedures for matters initiated by third parties, grants him a right as an individual to a hearing before an agency if he files a complaint seeking agency action. Subsection (3)(a) expressly provides, however, that it applies only "[w]here the law applicable to the agency permits persons other than the agency to initiate adjudicative proceedings." It is therefore clear that subsection 3(3) does not provide any substantive rights to individuals to initiate adjudicative hearings. That substantive right, if it exists, must be found elsewhere in the law. We therefore look to the law governing POST to see if private citizens are granted any right to initiate agency action.[2]

According to Nielson, POST's own administrative rules provide two methods whereby decertification proceedings against a peace officer may be initiated: First, an action may be initiated by POST itself if an investigation into allegations of misconduct reveals a "reasonable belief that cause exists for the refusal, suspension, or revocation of peace officer ... certification." Utah Admin.Code § R728–409–5a (1992); Second, an action may be initiated by the filing of "[a] complaint by a citizen which, on its face, appears to be a violation of section 409–3 ...."[3] Utah Admin.Code § R728–409–5(B)(6) (1992).

Nielson claims that rule 409–5(B)(6) gives members of the public "substantive rights in the disciplinary process," and that POST's nonaction constitutes a determination of Nielson's legal rights. That determination, claims Nielson, is subject to all of the provisions of UAPA, *see* section 63–

---

1. Our jurisdiction in this case is governed by Utah Code Ann. § 78–2a–3(2)(a) (1992), which states: "The Court of Appeals has appellate jurisdiction, including jurisdiction of interlocutory appeals, over: (a) the final orders and decrees resulting from formal adjudicative proceedings of state agencies...."

2. This is not to say that UAPA does not govern administrative proceedings actually conducted by POST, for it clearly does. *See* Utah Code Ann. § 67–15–2.1 (Supp.1992).

3. Rule 409–3 enumerates conduct that POST considers cause to refuse, suspend, or revoke peace officer certification.

46b–1(1)(a) (UAPA governs all state agency actions that determine legal rights), including judicial review. We disagree.

Nielson takes rule 409–5(B)(6) entirely out of context. Rule 409–5 is captioned "Investigative Procedure," and provides in relevant part as follows:

A. All investigations initiated shall be commenced upon a reasonable belief that cause exists for the refusal, suspension or revocation of peace officer, correctional officer, reserve/auxiliary officer or special function officer certification as indicated in section 409–3 above.

B. The *initiation of an investigation* may occur upon any of the following circumstances:

.   .   .   .   .

6. A complaint from a citizen which, on its face, appears to be a violation of section 409–3 above;

.   .   .   .   .

. . .

M. Final disposition of a case (i.e., close case, refer to department for follow-up action, *refer for adjudicative proceedings,* etc.) will be made by the bureau chief with the approval of the director.

(Emphases added.)

As is readily apparent, rule 409–5(B)(6) applies only to investigations, not adjudications. Nielson's argument is therefore clearly without merit. At best, Nielson has a right to complain to POST about Gurley's conduct, after which POST may conduct an investigation if there is reasonable belief that cause exists for suspension or revocation. Based on the results of the investigation, the bureau chief (with the approval of the director) has the discretion either to proceed with a hearing or to close the case. *See* rule 409–5(M). Nothing in rule 409–5 allows a private citizen to force POST to hold a decertification hearing. In fact, rule 409–8(A) expressly provides that "all adju-

dicative proceedings shall be commenced by notice of an Administrative Complaint. . . ."

▮▮▮ Furthermore, there is no statutory provision that allows POST to sit as an administrative tribunal to adjudicate citizen complaints against peace officers. *See* Utah Code Ann. § 67–15–10.5 (Supp.1992). The reference to "applicable law" found in section 63–46b–3(3)(a) is a reference to an agency's enabling statute as adopted by the legislature, not an agency's rules as adopted by the agency. Administrative agencies are statutory creatures that have no more power than that which is expressly or impliedly granted by statute. *Williams v. Public Serv. Comm'n,* 754 P.2d 41, 50 (Utah 1988) (any reasonable doubt of the existence of agency power must be resolved against the existence of such power); *SMP, Inc. v. Kirkman,* 843 P.2d 531, 533 (Utah App.1992) (agency may not act as adjudicative tribunal unless granted such authority by legislature).[4] The legislature, as the creator of POST, has not seen fit to grant POST the authority to sit as an adjudicative tribunal to hear and decide citizen complaints. POST could not simply assume such power by rule without violating the separation of powers doctrine. *Cf. SMP,* 843 P.2d at 533; Utah Const. art. I, § 1.

In essence, Nielson's complaint is that the bureau chief and the director abused their "prosecutorial discretion" by closing the case without formal adjudication. Nielson may not seek review of that decision under the pretense of reviewing an agency adjudication because there is no final order "resulting from formal adjudicative proceedings" for us to review. Section 78–2a–3(2)(a). Consequently, even though Gurley's misconduct is disturbing and may have warranted sanctions, we have no jurisdiction to review POST's decision to not

---

**4.** *See also Bevans v. Industrial Comm'n,* 790 P.2d 573, 578 (Utah App.1990) ("The Industrial Commission is not free to 'legislate' in areas apparently overlooked by our lawmakers or to exercise power not expressly or impliedly granted to it by the legislature, even in the name of fairness."); *Crowther v. Nationwide Mut. Ins.*

*Co.,* 762 P.2d 1119, 1122 (Utah App.1988) ("An administrative agency's authority to promulgate regulations is limited to those regulations which are consonant with the statutory framework, and neither contrary to the statute nor beyond its scope.").

bring an administrative complaint against him.[5]

## CONCLUSION

POST could not have adjudicated Nielson's allegations unless its investigation resulted in the filing of its own administrative complaint, which it did not. Since no formal administration proceeding has occurred, we have no jurisdiction to review POST's decision not to hold a decertification hearing. Nielson's petition is therefore dismissed.

RUSSON, J., concurs.

BILLINGS, J., concurs in result.

5. This opinion should not be misconstrued as closing other avenues of possible redress, such as an extraordinary writ under Utah Rule of Civil Procedure 65B.